IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 04 C 236 |
| | ) | |
| PAUL KELLY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Paul Kelly pleaded guilty to conspiracy to import heroin and cocaine, in violation of 21 U.S.C. § 963. He has filed a *pro se* petition under 28 U.S.C. § 2255, and seeks to vacate, set aside or correct his sentence of 192 months in prison. Petitioner filed his petition on January 13, 2004, and resolution of this matter has been outstanding due to numerous extensions requested by the government. After the government filed its response on July 28, 2005, the court ordered additional briefing, and directed the parties to focus on petitioner's claims of improper sentencing enhancements and ineffective assistance of counsel at sentencing and on appeal. United States v. Kelly, 2005 U.S. Dist. LEXIS 16220, 2005 WL 2139823 (N.D. Ill. 2005). Briefing is now complete, and for the following reasons the petition is denied.

Section 2255 relief is proper when a criminal defendant's conviction or sentence is based on "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Bischel v. United States, 32 F.3d 259, 263 (7th Cir. 1994) (citations omitted). When reviewing a *pro se* 2255 petition, the petition is entitled to a liberal reading, (Blake v. United States, 841 F.2d 203, 205-06 (7th Cir. 1988)), but all reasonable inferences are drawn in the government's favor. Carnine v. United

States, 974 F.2d 924, 928 (7th Cir. 1992).

Petitioner initially sought relief on four grounds: ineffective assistance of counsel, speedy trial violations, failure to receive a downward departure at sentencing, and improper sentencing enhancements. The court held petitioner's speedy trial claim to be frivolous because the extensions of time were justified, and petitioner's contention that his counsel was ineffective for not objecting to those extensions accordingly lacked merit. United States v. Kelly, 2004 U.S. Dist. LEXIS 19946, 2004 WL 2260635 (N.D. Ill. 2004). Petitioner's downward departure claim fails because it was raised on appeal and rejected by the Seventh Circuit. *See* United States v. Kelly, 337 F.3d 897, 900-02 (7th Cir. 2003). *See* Alexander v. United States, 121 F.3d 312, 313 (7th Cir. 1997) (arguments raised and decided on direct appeal cannot be entertained in a section 2255 proceeding absent relevant intervening legal developments). With respect to the downward departure, the Seventh Circuit held that petitioner's outright refusal to participate in a ride-along with government officers constituted a substantial breach of the plea agreement. Kelly, 337 F.3d at 902. After petitioner's breach, the government took the plea agreement off the table, and with the agreement no longer in force the downward departure that was offered in exchange for petitioner's cooperation was a nullity.

Only petitioner's sentencing enhancement and ineffective-assistance-of-counsel claims remain. Related to the sentencing enhancement claim, petitioner contends that the court miscalculated the base offense level by adding drug quantities to the amount that he acknowledged at sentencing (reply at 8). Petitioner's argument fails because his sentence was determined at the sentencing hearing and not when he pleaded guilty. After petitioner pleaded guilty to the indictment, the court explained to him that the government would not move for a downward departure and that the offense level would be determined after a sentencing

hearing (tr. at 13). With respect to the latter point, the court emphasized that it would not be bound by petitioner's plea (*id.* at 16). At the sentencing hearing, the government focused on four of the seven drug-smuggling trips that petitioner oversaw. It argued that petitioner was responsible for 171 grams of heroin from trip seven, 218 grams of heroin from trip three, and 55 grams of cocaine from trips one and five.

Petitioner did not fix his base offense level at 26 when he pleaded guilty to the 171 grams of heroin. The court informed petitioner that the Probation Office had set the offense level at 33 with a criminal history category of 6 (*id.* at 23), and also explained that he would have the opportunity to argue for a lower offense level (*id.* at 24-25). Never did the court state or imply that the offense level was set at 26. Further, there is no merit to petitioner's argument that the court erred by considering relevant conduct not mentioned in the indictment or the guilty plea when it calculated the drug quantity. *See* United States v. Sumner, 325 F.3d 884, 889 (7th Cir. 2003) (internal quote marks omitted) ("In calculating a defendant's base offense level under the Sentencing Guidelines, the sentencing court must consider types and quantities of drugs not specified in the counts of conviction but that were part of the same course of conduct or common scheme or plan as the convicted offenses."). Petitioner also cites Apprendi v. New Jersey, 530 U.S. 466 (2000), but his reliance on that case is misplaced because his sentence was less than the maximum proscribed punishment and the court made no factual findings to boost his sentence beyond the statutory ceiling.[1] Ultimately, the court imposed a sentence based on an offense level of 31 after we observed that "getting within the 400 range ... is a conservative estimate" (tr. at 72) and concluded that there was "no question" that the

---

[1] In his petition, petitioner acknowledges that the maximum sentence available was more than the sentence he received. *See* pet. at 9.

government had shown the contraband was "the equivalent of more than 400 kilograms of marijuana" (*id.* at 73). Petitioner fails to persuade the court to abandon that position.

Petitioner's sentence was enhanced by two levels for the use of minors and four levels for his leadership role. He challenges both enhancements, and we turn to the lesser first. According to petitioner, the government only showed that the minors accompanied others who engaged in illegal activity, and thus failed to show that they were used by petitioner (pet. at 57). Petitioner and his counsel made this argument at sentencing (tr. at 35, 68-69). The court declined to adopt that position, and held that the testimony showed that minors were used within the meaning of the sentencing guidelines (*id.* at 73). Petitioner enlisted young women to serve as drug smugglers, concealed the drugs in cans of baby formula, and used minors to avoid detection by customs officials (*see id.* at 48, 49, 52-54, 58). Section 3B1.4 applies if a person less than eighteen years of age is used to "commit the offense or assist in avoiding detection of, or apprehension for" the offense. Here, the minors assisted in avoiding detection because they created an image of normalcy, and in their absence there would be a greater probability of detection by customs officials. Thus, the minors were affirmatively involved in the drug-smuggling. *See* United States v. Hodges, 315 F.3d 794, 802 (7th Cir. 2003). Petitioner's argument suggests that the minors were not used because they took no active role in the crime or had knowledge of the criminal activity. But to trigger section 3B1.4, it is petitioner's conduct that matters. *See* United States v. Anderson, 259 F.3d 853, 863-64 (7th Cir. 2001) ("A defendant 'used' a minor in the commission of his crimes if his affirmative actions involved minors in his criminal activities."); United States v. Ramsey, 237 F.3d 853, 861 (7th Cir. 2001); United States v. Vivit, 214 F.3d 908, 920 (7th Cir. 2000). Petitioner used the minors within the meaning of section 3B1.4, and the two-point enhancement was entirely proper.

Petitioner next argues that the evidence did not depict him as a leader, and that he should not have received the four-level enhancement pursuant to section 3B1.1(a) (pet. at 61). Section 3B1.1(a) applies when "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Application note 4 to 3B1.1 sets forth relevant factors that help distinguish a defendant's role as a leader from one of manager or supervisor, which receives a lesser enhancement. Those factors include: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." "The primary concern of section 3B1.1 is the imposition of a punishment commensurate with the defendant's 'relative responsibility within a criminal organization.'" (United States v. Johnson-Dix, 54 F.3d 1295, 1309 (7th Cir. 1995) (quoting United States v. Flores, 51 F.3d 663, 665 (7th Cir. 1995)).

Petitioner admits that he bought plane tickets for his drug couriers, transported them to and from the airport, gave them money, and received drugs from them. Petitioner thus admits he participated in the conspiracy, but contends that he did not have a greater role than any other participant and therefore his participation did not rise to the level of organizer-leader (pet. 62). A review of the testimony at sentencing supports the finding of petitioner's leadership role. For trip one, petitioner paid for Tabitha Hylton's flight to Panama (tr. 46-47). Hylton, who was accompanied by a baby that was not her own, brought back three baby formula cans that contained liquid cocaine. She gave those cans to petitioner, who cooked the cocaine into crack that he then sold to drug dealers (*id.* at 46). Petitioner paid Hylton between

$1500 and $2000 for her services (*id.* at 46-47). For the second trip, petitioner and Leon Holmes sent Latrice Gayden and Nokia Johnson to Panama, with petitioner paying Gayden's way and Holmes paying Johnson's fare (*id.* at 48). Gayden and Johnson suspected they were under police surveillance and returned without any drugs (*id.*). Petitioner organized a third trip to Panama, which was made by Gayden, her baby and Hylton (*id.* at 49). Petitioner met Gayden and Hylton at the airport, and Gayden returned with 250 grams of heroin instead of cocaine – a change in plans that petitioner approved (*id.* at 49-51). Petitioner then gave the heroin to Holmes to sell on the street, and after selling the drugs, Holmes gave petitioner $16,000 in proceeds (*id.* at 50). For the fourth trip, petitioner sent Towana Collins and a baby to Panama, but Collins returned without any drugs (*id.* at 52). Petitioner accompanied Gayden for the fifth trip to Panama (*id.* at 53). On that trip petitioner gave his supplier $3,000 and in exchange he received three baby formula cans containing liquid cocaine (*id.*). Back in Chicago, petitioner cooked that cocaine into crack that he sold to drug dealers (*id.* at 54). For the sixth trip, petitioner sent Hope Shaw to Panama (*id.* at 59). Shaw did not return and petitioner assumed that she had been arrested (*id.* at 59). Petitioner then arranged for Latosha Robeson to travel to Panama, acquire drugs, and smuggle them back to Chicago (*id.* at 56). When petitioner went to pick up Robeson at O'Hare airport, he noticed a police car behind him and then he sped off, causing a high speed chase (*id.* 57). The police had in fact arrested Robeson, who had 171 grams of heroin (*id.* 26). Looking at the conspiracy as a whole, there were over five participants. *See* <u>United States v. Zizzo</u>, 120 F.3d 1338, 1362 (7th Cir. 1997) ("Rather than narrowly considering each predicate offense, we tally up the number of criminally responsible participants by looking at the overall conspiracy."). Petitioner recruited and organized Hylton, Gayden, Collins, Shaw and Robeson as couriers in his drug-

smuggling scheme. The court was not confined to the offense of conviction and could look to relevant conduct. United States v. Montague, 29 F.3d 317, 323 (7th Cir. 1994). In light of the relevant conduct, petitioner's role was one of leadership because he recruited others, had decision-making authority, planned and organized the trips to Panama, received a significant share of the profits, and controlled other members of the conspiracy (tr. at 73).

Petitioner also argues that his sentence is based on improper double-counting because he received enhancements for recruiting and using minors, and for his leadership role. There is no double-counting here because the crime of conviction does not cover the concept of leadership, unlike in United States v. Stevenson, 6 F.3d 1262, 1270 (7th Cir. 1993), in which the defendant was convicted under 21 U.S.C. § 845(b)(2) for knowingly using a minor to assist in a crime, and also received a two-level sentencing enhancement for leadership because he used a minor. The court observed that "to sentence the appellant based upon both recruiting a minor and for the appellant's leadership role is 'double counting.' His sentence is being enhanced based upon the same elements that resulted in his offense of conviction." Here, the offense to which petitioner pled guilty does not encompass the same elements as the enhancements. *See* United States v. Mohammad, 53 F.3d 1426, 1437-38 (7th Cir. 1995).

Having addressed petitioner's sentencing arguments, we now turn to his claim that he received ineffective assistance of counsel at sentencing and on appeal. It is beyond argument that "defense counsel in a criminal case must perform as a reasonably competent attorney." United States v. Gwiazdzinski, 141 F.3d 784, 789 (7th Cir. 1998). To prevail on an ineffective-assistance-of-counsel claim petitioner must show that his counsel's performance fell below an object standard of reasonableness, and that that deficient performance prejudiced him. Strickland v. Washington, 466 U.S. 668, 687-88 (1984), United States v. Shukri, 207 F.3d 412,

418 (7th Cir. 2000). Petitioner must point to specific acts or omissions in order to overcome the strong presumption that he received effective and reasonable assistance of counsel. United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995).

Turning to the prejudice prong, petitioner contends that but for counsel's ineffectiveness he would have received a downward departure. The loss of the downward departure cannot be attributed to petitioner's attorneys because, as the Seventh Circuit held, petitioner's substantial breach of the plea agreement allowed the government to withdraw the downward departure. Petitioner's downward departure argument cannot establish prejudice necessary for his ineffective-assistance-of-counsel claim against either his attorney at sentencing, John Beal, or his appellate attorney, Ronald Hanna.

Petitioner also argues that counsel's performance prejudiced him because he received sentencing enhancements and a higher base offense level. We have already determined that the sentencing enhancements were proper. Beal challenged both enhancements (tr. at 35, 65, 66). Petitioner acknowledged that Beal argued against the four-level enhancement. *See id.* at 69 ("My lawyer argued the fact that I am not a leader."); *id.* at 65 (Beal arguing that petitioner was not a leader). With respect to the sentencing enhancements, Beal's conduct was far from unreasonable.

Firing another salvo at Beal's performance, petitioner claims that Beal unreasonably conceded that six baby formula cans were brought back into the country. Petitioner argues that without this concession, the base offense level would have been 26. Petitioner's argument is without merit. Hylton smuggled three cans on the first trip and Gayden brought three cans on the fifth trip. The government argued, and the court ultimately held, that these two trips involved 55 grams of cocaine. It would have been unsound strategy for Beal to deny the

existence of these cans in light of petitioner's statement to Agent Peter Darling, Hylton's testimony (tr. at 46), Holmes' testimony (tr. at 47), and Gayden's testimony (tr. at 54). Beal only acknowledged that the cans were brought into the country and that Gayden was the courier. He did not state that petitioner was responsible for the cans (*id.* at 62). Indeed, Beal argued that the cans should not be attributed to petitioner, and if they were, then the amount of actual cocaine could not be accurately calculated:

> Then we have the question of how much cocaine is attributable to Mr. Kelly. None of the cocaine cans were recovered in Mr. Kelly's case. We submit that because there was this liquid cocaine, the size of the can does not tell you the amount of cocaine that's attributable because the Seventh Circuit recognizes that the waste water in liquid cocaine does not count, and the equivalent substance is waste water. (*Id.* at 63-64)

Beal went on to argue that the lowest offense level applicable to cocaine was appropriate (*id.* at 64), and that when that level was combined with a lower amount of heroin that he advocated (*id.* at 63), the total amount would not exceed 400 kilograms of marijuana (*id.* at 65). Thus, Beal argued for a base offense level of 26 – exactly what petitioner says he failed to do. Again, Beal's conduct at sentencing was far from ineffective.

Petitioner was also entitled to receive effective assistance of counsel on direct appeal. Gallo-Vasquez v. United States, 402 F.3d 793, 800 (7th Cir. 2005). Petitioner faults Hanna for not raising issues and for failing to make a good-faith effort to raise facts relevant to the appeal (pet. at 12). Petitioner fails to present the facts that Hanna chose not to present (*id.* at 12-13). The court cannot determine whether Hanna's decisions were unreasonable (as opposed to sound strategy) and how, if the facts were presented, the outcome would be different. Conclusory allegations of prejudice are insufficient to warrant relief. Gallo-Vasquez, 402 F.3d at 800.

## CONCLUSION

For the foregoing reasons, the petition is denied.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Oct. 18, 2005.